UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. 10-CR-20014
                                        Honorable Denise Page Hood

NABILA MAHBUB (D-16),

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S CONSOLIDATED MOTION FOR
NEW TRIAL AND JUDGMENT OF ACQUITTAL [#574]**

On October 26, 2012, a jury found Defendant Nabila Mahbub guilty of one count of conspiracy to commit health care fraud pursuant to 18 U.S.C. § 1349. Mahbub now moves for judgment of acquittal or, in the alternative, for a new trial and to set aside the verdict. For the reasons discussed below, Defendant's motion for a new trial and judgment of acquittal is **DENIED**.

**I.   ANALYSIS**

Pursuant to Federal Rule of Criminal Procedure 29(c)(2), the Court may set aside a verdict and enter a judgment of acquittal. Defendant challenges the sufficiency of the evidence before the Court. "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.'" *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.

1986)). The question before the Court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1978) (citing *Johnson v. Virginia*, 406 U.S. 356, 362 (1972)) (emphasis in original). "The government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). In considering a Rule 29 motion, the Court cannot "weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Wright*, 16 F.3d at 1440. Further, the Court must draw all reasonable inferences in favor of the jury verdict. *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008).

A motion for a new trial is governed by Federal Rule of Criminal Procedure 33. The Rule provides that the Court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that 'the jury's verdict was against the manifest weight of the evidence.'" *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting *United States v. Crumb*, 187 F. App'x 532, 536 (6th Cir. 2006)). "Generally, such motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *United States v. Graham*,

125 F. App'x 624, 628 (6th Cir. 2005) (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979), *aff'd*, 633 F.2d 219 (6th Cir. 1980)). The district judge may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence. *See United States v. Lutz*, 154 F.3d 581, 589 (6th Cir.1998). "The defendant bears the burden of proving the need for a new trial and such motions should be granted sparingly and with caution." *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).

### A. Insufficient Evidence

First, Defendant argues that the government presented insufficient evidence at trial to prove beyond a reasonable doubt that Defendant "knowingly and willfully" conspired to commit health care fraud at All American. Specifically, Defendant contends that the evidence was insufficient to show that she "acted with any intent to defraud, as she followed the business practice at All American, and executed the orders of Hassan Akhtar, without any intent to defraud." **[Docket No. 574, at 7]** The Government disagrees and states that it "presented multiple examples of evidence that, if believed by the jury, could sustain a conviction of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349." **[Docket No. 578, at 4-5]** The Government highlights the following pieces of evidence:

- **Recruiters:** Regarding recruiters, numerous witnesses testified that she was a key liaison at All American. She

3

would obtain pre-signed therapy notes from recruiters that would be used by PTs and PTAs like Faisal Chaudry and Jessica Vigil to create false visit notes. According to Hassan Akhtar and Maira Suleman, Mahbub acknowledged to both of them that she worked with patient recruiters to take care of patients who complained about not being paid. The government introduced checks into evidence that Mahbub herself wrote to recruiters; the evidence at trial showed that Mahbub knew the recruiters were bribing patients with money to provide their Medicare information as part of the scheme.

- **PTs and PTAs:** Both Jessica Vigil and Faisal Chaudry testified that Ms. Mahbub would keep and distribute the pre-signed therapy documents they used to create fake patient files. Mr. Chaudry also testified that Ms. Mahbub calculated his pay for doing that, including breaking up paychecks to conceal how many visit notes Mr. Chaudry was being paid to make up in a two week period (which were for more visits than he could have possibly done if he were actually doing the work and not just falsifying documents). There was also testimony from Mr. Akhtar and Ms. Vigil about Ms. Mahbub adding information onto fake OASIS and recertification forms to justify home health episodes.

- **Data Entry:** There was testimony from Faisal Chaudry and Amanda Prescott about Mahbub creating fake, duplicate entries for PTs and PTAs in the Synergy software/billing system to fit the impossible number of visits into the system to insure that Medicare would pay the maximum amount to All American. Ms. Prescott also testified that Ms. Mahbub directed her to pick dates and times in Synergy based not on when therapy happened, but on what they could fit into the calendar.

4

**[Docket No. 578, at 5-6]** The Government also notes that its trial testimony highlighted above "was corroborated by documents, electronic records and financial documents." **[Id.]**

Considering all the evidence presented at trial in the light most favorable to the Government, a reasonable juror could have found that the evidence established beyond a reasonable doubt that Defendant knowingly and willingly altered medical records that were submitted to Medicare as a part of the March 2009 audit. There is also sufficient evidence to show that Defendant Mahbub requested that others fabricate visit notes and physical therapy evaluations that were pre-signed by patients after Mr. Akhtar, whom Defendant claims directed all of her actions, left All American. In short, there was sufficient evidence for the trier of fact to find that Defendant had joined in the overall conspiracy to commit health care fraud at All American.

## B. Government's Late Disclosure of Chaudry Interview Report

Second, Defendant argues that the Government's failure to disclose an interview report concerning witness, Faisal Chaudry, until after the jury began deliberations was detrimental to her defense. Defendant states that the interview report was important because it "show[ed] that Chaudry did visit patients 'that were old and homebound.'" Though Chaudry stated that these visits were with patients

5

after he left work at All America, Defendant contends that the interview "impeaches Chaudry's testimony that he just filled out visit forms and never saw patients." Defendant claims that cross-examination of Chaudry would have been "much more effective" if counsel had been provided with the report before jury deliberations "to show the jury that Chaudry was not just a person who filled out visit forms" and to show the defense's theory—that Defendant "could not have known which patients Chaudry saw, and which patients he did not see, because [he] actually saw patients, and his visit notes were the same for all patients."

Defense counsel relies on United States Court of Appeals for the Ninth Circuit case *United States v. Reyes*, 577 F.3d 1069 (9th Cir. 2009), though not binding on this Court, for the proposition that Defendant should be awarded a new trial because the Government made statements to the jury that it knew that Chaudry "never saw any patients." In *Reyes*, the chief executive officer of a corporation and the vice-president of the corporation's Human Resources Department, were convicted of, among other things, falsifying corporate books and records in a scheme to reward employees with grants of backdated stock options. The Ninth Circuit reversed Reyes's conviction and remanded the case for a new trial finding harmful prosecutorial misconduct. Specifically, the Court stated, "In direct contravention of the statements given to the FBI by Finance Department executives that they did know about the backdating, the

prosecutor asserted to the jury in closing that the entire Finance Department did not know about the backdating, and further that the government's theory of the case was that 'finance did not know anything.'" *Reyes*, 577 F.3d at 1076-77. The Ninth Circuit Court noted:

> Moreover, the prosecutor's statements were particularly prejudicial given that Reyes'[s] defense rested on his delegating his responsibilities to others and reliance on them. At the end there was considerable focus on the issue of what the Finance Department knew. The prosecutor's false statements went directly to this issue. Moreover, the statements were made during closing arguments, both orally and visually, and closing statements from the prosecution "matter a great deal." [*United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993)]. Deliberate false statements by those privileged to represent the United States harm the trial process and the integrity of our prosecutorial system. We do not lightly tolerate a prosecutor asserting as a fact to the jury something known to be untrue or, at the very least, that the prosecution had very strong reason to doubt. *See* [*United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002)]. There is no reason to tolerate such misconduct here.

*Id.* at 1078.

The Court is not persuaded that the statements made by the Government in this case in rebuttal argument rise to the level of those made in *Reyes* warranting the Court granting Defendant a new trial. The Court is aware that a "prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v.*

*Young*, 470 U.S. 1, 18-19 (1985) (citing *Berger v. United States*, 295 U.S. 78, 88–89 (1935)). For this reason, it is improper for the government to present to the jury statements or inferences it knows to be false or has very strong reason to doubt. *See Blueford*, 312 F.3d at 968 (citing *Kojayan*, 8 F.3d at 1318-19).

Here, the prosecutor argued to the jury that Chaudry did not see any patients at All American, the facility Defendant was employed with leading to her charge of health care fraud. Chaudry's interview report stated that Chaudry began to work for Acure Home Care, Inc. ("Acure") at the end of 2009 as a Physical Therapy Assistant. While at Acure, Chaudry "visited approximately two to ten patients that were old and homebound [and] spent between 30-45 minutes with each patient." There is nothing in the report regarding Chaudry having seen patients while employed at All American. Defendant argues that Chaudry testified that he "mostly" did not see patients while at All American because "[t]he patients were too hard to get ahold of." **[Docket No. 578, Ex. A, at 1]** The Court notes that Chaudry also testified that he "pled guilty" to Medicare fraud because he "made up fake physical therapy notes for homebound patients that I didn't see." **[Docket No. 582, filed May 20, 2013, Faisal Chaudry Testimony, at 4, 5]** Chaudry stated that he "engage[d] in this conduct" while employed at "All American Home Care" and reiterated that he "didn't see" patients. **[Id.]**

8

Unlike in *Reyes*, here, the Court is not satisfied that the information contained in the report, even if relevant, "went directly to [the] issue" of Defendant's involvement in the conspiracy to commit Medicare fraud at All American. Further, the Court is not persuaded that the prosecutor's statements regarding Chaudry's practices while at All American were "particularly prejudicial" given that the government's statements were in regards to All American, the facility at issue in Defendant's trial, and not Acure, the facility Chaudry worked at after leaving All American. Awarding a new trial is not justified on this claim.

## C. Ineffective Assistance of Counsel

Defendant also makes an ineffective assistance of counsel claim. The legal principles that govern claims of ineffective assistance of counsel were established in *Strickland v. Washington*, 466 U.S. 668 (1984). An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Specific guidelines for appropriate attorney conduct have not been articulated. Instead courts have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*

9

Opening the door to damaging testimony can constitute deficient performance. *Jones v. Harry*, 405 F. App'x 23, 27 (6th Cir. 2010) (citing *White v. Thaler*, 610 F.3d 890, 900 (5th Cir. 2010)). However, in *Strickland*, the Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 669 (internal citations omitted).

The *Strickland* Court further explained that, to establish deficient performance, a defendant must identify acts that were "outside the wide range of professionally competent assistance." *Id.* To satisfy the prejudice prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Applying the *Strickland* standard, the Sixth Circuit has held that a reviewing court must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997).

Prior to trial, Defense Counsel filed a motion to exclude certain evidence regarding Defendant's prior work history at a company called Visiting Nurse Service of Michigan. **[Docket No. 412, filed November 10, 2011]** In that motion, Defense Counsel argued that testimony that "a witness claim[ed] that she told Mahbub not to work for Shahab because he was a 'crook' ha[d] little probative value as to Mahbub's intent," the testimony was not 404(b) evidence, and the testimony did not pass the 403 balancing test because the testimony was "more prejudicial than probative." Defendant now argues that Defense Counsel was ineffective because "the court allowed the government to present [Defendant's] employment application . . . at Patient Choice, a company she worked at briefly before she went to All American" based on defense counsel "open[ing] the door" through statements he made in his opening. Defendant states that "[w]hile counsel disagreed with the court's ruling," the job application was admitted. Defendant contends that the application "was extremely

11

prejudicial to the defense argument and theory of the case: that [Defendant] was following orders at All American" because it showed that Defendant had 4 years of experience with Medicaid, Medicare, and Blue Cross.

Assuming, arguendo, that the Court is satisfied that Defendant has shown that counsel's performance was deficient based on counsel's statements causing admission of documents that he moved the Court to withhold from the jury, the Court is not persuaded that counsel's purported deficiency prejudiced the defense. While Defense counsel's statements may have allowed Defendant's application to come into evidence, Defendant has failed to show a "reasonable probability that, but for [admission of the document], the result of the proceeding would have been different." Defendant's theory, that she acted only by direction of Mr. Akhtar, was directly refuted by evidence at trial. The government presented ample evidence of Defendant's involvement in the criminal conspiracy, actions which continued even after Akhtar stopped working for All American. For this reason, the Court cannot determine that the alleged errors "undermined the reliability of and confidence" in the jury's verdict.

## II. CONCLUSION

For reasons set forth above, the Court finds that sufficient evidence was presented at trial for the jury to conclude that the Government satisfied its burden of

12

proof with respect to each element of Count I. The Court is also not persuaded that the jury's verdict was against the manifest weight of the evidence such that the interests of justice require a new trial.

Accordingly,

**IT IS ORDERED** that Defendant's Consolidated Motion for New Trial and Judgment of Acquittal **[Docket No. 574, filed November May 1, 2013]** is **DENIED**.

**IT IS FURTHER ORDERED** that sentencing in this matter will proceed on March 27, 2014, at 2:00 p.m.

**IT IS SO ORDERED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: February 27, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 27, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager